**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert L. Miller, Jr, | No. CV-22-02172-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Ascenda USA Incorporated, *et al.*, | |
| Defendants. | |

At issue is Defendant Maplebear Inc. dba Instacart's ("Instacart") Motion to Dismiss (Doc. 34, MTD) Plaintiff's Amended Complaint (Doc. 17, Am. Compl.). *Pro Se* Plaintiff Robert L. Miller Jr. filed a Response (Doc. 40, Resp.), and Instacart filed a Reply (Doc. 41, Reply).

**I.  BACKGROUND**

Plaintiff initially filed a Complaint against only his former employer, Ascenda USA Inc. dba 24/7 InTouch ("InTouch"). (Doc. 1, Compl.) Plaintiff then filed an Amended Complaint against InTouch, two of its managers, and Instacart, alleging claims of discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), and the Arizona Civil Rights Act, ("ACRA"), A.R.S. § 41-1463.

InTouch employed Plaintiff between July 27, 2017 and July 8, 2020 (Am. Compl. ¶¶ 1, 89), and Plaintiff's claims arise out of several alleged acts of discrimination occurring

over the course of his employment. Plaintiff alleges he is "dark-skinned Black," 58 years old, and has disabilities including "depression, anxiety, and related illnesses including chronic back and digestive system illness." (Am. Compl. at 4 of 6.) Plaintiff states his supervisors favored "lighter skinned, younger agents." (Am. Compl. ¶¶ 8, 28.) According to Plaintiff, "a dark-skinned Black man" quit his job because InTouch passed him over for promotions given to "light-skinned Team Leads ranked below him." (Am. Compl. ¶¶ 33–34.) When Plaintiff asked for shift changes, his supervisors used "false shift-workload information and false pay-rate information" to deny them, and younger, lighter-skinned coworkers did not experience the same treatment. (Am. Compl. ¶¶ 20-21.) InTouch supervisors refused to communicate with Plaintiff, caused him to lose his dignity, made outrageous claims about his work, expressed insensitivity to his medical and familial situations, and harassed him when, again, other lighter-skinned coworkers did not experience the same treatment. (Am. Compl. ¶¶ 48, 49, 58, 69, 75-79.)

Instacart is a client of InTouch. During his employment at InTouch, Plaintiff worked on the "Instacart campaign," where his employer supported Instacart's grocery services, and it is during this time he claims he experienced harassment and discrimination from Instacart. (Am. Compl. ¶¶ 5, 30.) After InTouch promoted Plaintiff temporarily to Team Lead, he alleges Instacart managers did not provide him with formal training or adequate support, which was a "form of harassment." (Am. Compl. ¶ 37.)

Separate from the Amended Complaint, Plaintiff's Response presents additional facts about the relationship between himself, InTouch, and Instacart. Plaintiff describes the relationship between Instacart and InTouch as such:

> Instacart is an employer . . . in San Francisco, CA . . . . Instacart . . . hired general contractor 24/7 InTouch to use its telecommunications centers including Mesa, AZ, to service and support Instacart's grocery shopping/grocery delivery operations. Which includes handling Instacart consumers' problems when those consumers have challenges with their grocery orders . . . 24/7 InTouch executed Instacart's service and support operations through its own employees, or subcontractors, who physically worked in the 24/7 InTouch telecommunications centers and were not employees of Instacart. I reiterate that we were not employees of Instacart.

> While I was not an Instacart employee, at some point Instacart itself had direct control over the [subcontractor] work that I was doing.

(Resp. at 2 of 6 (brackets in original).) In conjunction with the Instacart campaign, the InTouch Quality Assurance Department monitored and managed a skill-based system facilitated through InTouch's computer software and telephones. (Resp. at 2 of 6.) Through this system, the Quality Assurance Department could deem agents insubordinate if they were not "showing as 'live' and ready to handle ops calls." (Resp. at 2 of 6.) At some point during the campaign, Instacart could "directly facilitate those operations." (Resp. at 3 of 6.) During his time as an agent, Instacart allegedly accused Plaintiff of "being insubordinate" and harassed him both with his workload and when they set "the daily computer controls and skills at [his] station," leading to his termination. (Resp. at 2–4 of 6.)

Instacart now moves to dismiss all of Plaintiff's claims against it under Fed. R. of Civ. P. 12(b)(6).

## II.  LEGAL STANDARD

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**III.   ANALYSIS**

    **A.   Exhaustion of Administrative Remedies**

To begin with, Plaintiff failed to exhaust administrative remedies for his claims against Instacart under Title VII, the ADA, the ADEA, and the ACRA. For a Title VII claim, a plaintiff must first exhaust any administrative remedy available under 42 U.S.C. § 2000e-5 by filing a charge with the Equal Employment Opportunity Commission ("EEOC"). *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). When the plaintiff has not yet received a right-to-sue letter from the EEOC, his Title VII claim is subject to dismissal. *Id.* Filing a timely charge of discrimination with the EEOC or a state or local agency that regulates unlawful employment practices is also a mandatory prerequisite to maintaining an ADA action for employment discrimination. *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000) (overruled on other grounds); *Zimmerman v. State of Or. Dep't of Justice*, 983 F. Supp. 1327, 1328 (D. Or. 1997).

The ADEA also requires plaintiffs to file a discrimination charge with the EEOC before bringing a civil action: "No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]." 29 U.S.C. § 626. A similar filing requirement exists for A.R.S. § 41-1463: "The ACRA . . . requires an employee to file a charge with the Arizona Civil Rights Division

within 180 days of an alleged violation . . . and an employee who does not do so loses her right to sue[.]" *Peterson v. City of Surprise*, 418 P.3d 1020, 1024 (Ariz. Ct. App. 2018).

Here, Plaintiff filed a charge against InTouch, not Instacart. Indeed, there is no right-to-sue letter concerning Instacart attached to Plaintiff's Amended Complaint. (MTD Exs. A, B.)[1] This procedural defect precludes Plaintiff's claims under Title VII, the ADA, the ADEA, and the ACRA.

### B.    Employer-Employee Relationship

All of Plaintiff's claims require an employee-employer relationship. Even if the Court were to both construe the EEOC charge filed against InTouch as a charge against Instacart and consider Plaintiff's new allegations within the Response, Plaintiff has failed to supply any facts or law supporting the proposition that Instacart and Plaintiff were in an employer-employee relationship such that Plaintiff can bring employment discrimination claims against Instacart.

Generally, Plaintiff's additional facts alleged in the Response must be added to his Amended Complaint through a motion to amend. Plaintiff is required to seek permission to amend from the Court, absent Instacart's consent. Fed. R. Civ. P. 15(a)(2). However, in this instance, amendment would be futile: "A proposed [Second] Amended Complaint is futile if it would be immediately subject to dismissal. Thus, the proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) (quotations and citations omitted), *aff'd on reh'g en banc on other grounds,* 681 F.3d 1041 (9th Cir. 2012). Recognizing that "[f]utility alone can justify the denial of a motion for leave to amend," the Court proceeds to consider Plaintiff's claims and allegations in both the Amended Complaint and Response. *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003).

---

[1] A plaintiff's "amended pleading must not incorporate by reference any part of the preceding pleading, including exhibits." LRCiv 15.1. With regard to InTouch, Plaintiff attached a copy of a right-to-sue letter to his original Complaint, but neglected to attach it to the Amended Complaint. Instacart attached a copy of the EEOC charge filed against InTouch and corresponding right-to-sue letter to its Motion. (MTD Exs. A, B.)

- 5 -

All of Plaintiff's claims require allegations that support the conclusion that Instacart was his employer. Title VII provides protection to employers from certain employer practices. 42 § U.S.C. 2000e-2. Likewise, sections 12112 to 12117 of the ADA concern employer-employee relationships: "Title I covers all aspects of the employer-employee relationship . . . it does not cover other relationships, which are addressed elsewhere in the ADA." *Fleming v. Yuma Regl. Med. Ctr.*, 587 F.3d 938, 942 (9th Cir. 2009). And claimants seeking relief under the ADEA "must establish [themselves] as an employee." *Barnhart v. New York Life Ins. Co.*, 141 F.3d 1310, 1312 (9th Cir. 1998); *see also* 29 U.S.C. § 623(a). The Civil Rights Act of 1866 prohibits "all racial discrimination in the making of both public and private contracts. . . . A claim under section 1981 is sufficient to withstand a motion to dismiss if it alleges that plaintiff suffered discrimination in employment on the basis of race." *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 625 (9th Cir. 1988). Finally, the ACRA requires an employer-employee relationship for a plaintiff to bring a claim: "We hold that Dr. Coehlo was not an employee of St. Luke's, as that term is defined in the ACRA. Accordingly, Dr. Coehlo's discrimination charge did not give the [Arizona Civil Rights] Division jurisdiction under the ACRA to conduct an investigation of St. Luke's peer review process." *St. Luke's Health System v. State, Dept. of L., Civ. Rights Div.*, 884 P.2d 259, 261. (Ariz. Ct. App. 1994.)

In his Response, Plaintiff points to two negligence cases in an attempt to support the proposition that Instacart employed Plaintiff. In both cases, subcontractors sustained physical injuries because of a general contractor's negligence. *Manhattan-Dickman Const. Co. v. Shawler*, 558 P.2d 894 (Ariz. 1976); *Lewis v. N.J. Riebe Enters., Inc.*, 825 P.2d 5 (Ariz. 1992). As Instacart's Reply notes, *Shawler* concerned a general contractor's failure to use reasonable care as it exercised physical control over a worksite containing a dangerous condition. 558 P.2d at 894. The Arizona Supreme Court determined that a jury could find a general contractor liable for negligence based on its failure to exercise reasonable care resulting in physical injuries sustained by the subcontractor's employees. *Id.* Similarly, in *Lewis*, the Court upheld the trial court's finding that a general contractor

1    was negligent when it failed to provide a safe workspace to subcontractor employees: "[a
2    general contractor] may be liable under the rule stated in [§ 414] unless he exercises his
3    supervisory control with reasonable care so as to prevent the work which he has ordered to
4    be done from causing injury to others." 825 P.2d at 5. Both of these cases are
5    distinguishable from Plaintiff's.

6    Primarily, Plaintiff has not provided any facts to support the proposition that
7    Instacart employed him or physically controlled his working environment. None of
8    Instacart's alleged behavior is applicable to the principle relied upon in *Shawler*: "One who
9    entrusts work to an independent contractor, but who retains the control of any part of the
10   work, is subject to liability for physical harm to others for whose safety the employer owes
11   a duty to exercise reasonable care, which is caused by his failure to exercise his control
12   with reasonable care." *Id.* at 898. Most importantly, Plaintiff has not alleged any facts to
13   support the idea that he was in an employee-employer relationship with Instacart. As such,
14   he cannot show that Instacart owed him a duty of care.

15   Secondarily, even if Instacart owed him a duty of care, Plaintiff's Amended
16   Complaint is neither based on an alleged physical injury nor negligence principles. Plaintiff
17   has not alleged that he suffered any physical injury. He has only alleged discriminatory
18   conduct including termination of employment, failure to accommodate a disability, unequal
19   terms and conditions of employment, retaliation, and harassment. (Am. Compl. at 4.) For
20   these reasons, Plaintiff's reliance on *Shawler* and *Lewis* is misplaced as the facts and legal
21   theories of each of these cases are distinguishable from Plaintiff's discrimination claims.

22   Next, Plaintiff cites A.R.S. § 23-902(B)(C), Arizona's Workers' Compensation
23   statute, as grounds for suit against Instacart. The sole and exclusive forum for workers'
24   compensation claims is the Industrial Commission of Arizona. *Sandoval v. Salt River*
25   *Project Agric. Improvement & Power Dist.*, 571 P.2d 706, 710 (Ariz. Ct. App. 1977); *see*
26   *also Hixon v. State Comp. Fund*, 565 P.2d 898, 899 (Ariz. Ct. App. 1977); *S.H. Kress &*
27   *Co. v. Super. Ct. of Maricopa Cnty.*, 182 P.2d 931, 933 (Ariz. 1947).  As such, this Court
28   is not the proper forum for a Workman's Compensation claim.

1    Finally, Plaintiff asserts that he has a claim under the doctrine of *respondeat superior* and that discovery may yield evidence that Instacart owed him a non-delegable duty. (Resp. at 5 of 6.) Again, this theory fails because Plaintiff has not provided facts supporting the assertion he was employed by Instacart, nor has Plaintiff provided facts that support the proposition InTouch and Instacart had an employee-employer relationship.

As the Supreme Court of Arizona has noted, the doctrine of *respondeat superior* "generally holds an employer vicariously liable for the negligent work-related actions of its employees." *Engler v. Gulf Interstate Engr., Inc.*, 280 P.3d 599, 601 (Ariz. 2012) (quoting *Tarron v. Bowen Mach. & Fabricating, Inc*., 235 P.3d 1030, 1033 (Ariz. 2010)). Employers are "vicariously liable" for the actions of their employees when an "employee is acting within the scope of employment when the accident occurs." *Id.* at 602 (citing *State v. Super. Ct*. (*Rousseau*), 524 P.2d 951, 953 (1974)). In situations where a contractor has employed sub-contractor employees, the Arizona Supreme Court has explained that employers are not "liable for the negligence of an independent contractor" unless the employer has delegated the "performance of a special duty to an independent contractor." *Wiggs v. City of Phoenix*, 10 P.3d 625, 627 (Ariz. 2000) (citation omitted).

Because Plaintiff agrees he was not an employee of Instacart and has not alleged facts that suggest an employer-employee relationship between InTouch and Instacart, the doctrine of *respondeat superior* is inapplicable. (Resp. 2 of 6.) This theory also fails because Plaintiff has not alleged any facts to support the proposition that Instacart owed him a special duty. Lastly, these theories are negligence theories, and Plaintiff has not pled a negligence cause of action. For these reasons, the doctrine of *respondeat superior* is inapplicable and the theory that Instacart owed Plaintiff a non-delegable duty is unsupported.

Four of Plaintiff's claims against Instacart fail on account of a procedural defect: Plaintiff's failure to exhaust his administrative remedies. All five claims fail because Plaintiff has not supplied law or facts to support the conclusion that Plaintiff was in an employer-employee relationship with Instacart. Moreover, Plaintiff's proposed amendments to his Amended Complaint found in the Response would be futile.

**IT IS THEREFORE ORDERED** granting Defendant Instacart's Motion to Dismiss (Doc. 34). Plaintiff's claims against Instacart are dismissed with prejudice.

Dated this 24th day of July, 2023.

*[signature]*

Honorable John J. Tuchi
United States District Judge