1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8

9    Robert L. Miller, Jr,                              No. CV-22-02172-PHX-JJT

10                     Plaintiff,                       **ORDER**

11   v.

12   Ascenda USA Incorporated, *et al.*,

13                     Defendants.

14

15          At issue is Defendants Marc Lloyd, Greg Fettes, and IntouchCX, Inc.'s Motion to

16   Dismiss (Doc. 84, Mot.), to which *pro se* Plaintiff Robert L. Miller filed a Response

17   (Doc. 88, Resp.) and Defendants filed a Reply (Doc. 89, Reply). The Court finds it

18   appropriate to resolve the Motion without oral argument. LRCiv 7.2(f).

19   **I.      BACKGROUND**

20          In the Third Amended Complaint (Doc. 68, TAC), the operative pleading, Plaintiff

21   alleges that he is a Black man with disabilities of "depression, anxiety, and related illnesses

22   including chronic back and digestive system illness." (TAC at 4–5.) He names as

23   Defendants Canada-based 24/7 InTouch[1], Marc Lloyd ("SVP, IntouchCX Global Human

24   Resources") and Greg Fettes ("Founder") (collectively here, "Canadian Defendants"), as

25   well as IntouchCX US, Inc. (TAC at 2–3.)

26

27          [1] 24/7 InTouch is a d/b/a of IntouchCX, and Plaintiff identified it with an Arizona
     address in the TAC. Plaintiff did not specify IntouchCX, Inc.—a Canadian corporation—
28   as a Defendant in the TAC, but service was executed on IntouchCX, Inc. based on the
     naming of 24/7 InTouch as Defendant, and IntouchCX, Inc. has joined in the present
     Motion to Dismiss.

1    Plaintiff claims that the Canadian Defendants and IntouchCX US discriminated

2    against him in employment in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; the

3    Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.* ("ADA"); Section 1981 of the

4    Civil Rights Act, 42 U.S.C. § 1981; and the Arizona Civil Rights Act, A.R.S. § 41-1463

5    ("ACRA"). (TAC at 1–4.) He filed a Charge of Discrimination with the Equal Employment

6    Opportunity Commission ("EEOC") dated December 23, 2020, and the EEOC issued a

7    Right to Sue letter on September 29, 2022. (TAC at 5; Mot. Ex. B, EEOC Charge.)

8    Previously, the Court entered an Order (Doc. 90) granting in part and denying in

9    part a Motion to Dismiss (Doc. 70) filed by IntouchCX US, finding Plaintiff stated claims

10   against this Defendant for disability discrimination under the ADA and ACRA, and for

11   racial discrimination under § 1981.[2] In so doing, the Court construed Plaintiff's many

12   allegations in the TAC against a single, unspecified party Plaintiff calls "Defendant"—

13   even though there are four Defendants—as allegations against his employer, IntouchCX

14   US, Inc., which is located in Arizona, where Plaintiff worked. (*E.g.*, TAC ¶ 1 ("[Plaintiff]

15   was employed by *Defendant* as a Tier 2 (supv) Agent and as a Tier 1 (Floor) Agent."

16   (emphasis added)).)

17   The Canadian Defendants now move to dismiss the claims against them under

18   Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction, and Rule

19   12(b)(6), for failure to state a claim. Application of Rule 12(b)(2) resolves the Canadian

20   Defendants' Motion.

21   **II.    LEGAL STANDARD**

22   For a federal court to adjudicate a matter, it must have jurisdiction over the parties.

23   *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982).

24   "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears

25   the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Nat.*

26   *Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013). "Because there is no statutory

27

28   _____

     [2] The Court found that Plaintiff did not state claims in the TAC for defamation, breach of contract, discrimination under the Age Discrimination in Employment Act, or under any other legal theory. (Doc. 90 at 2 n.2.)

method for resolving [personal jurisdiction], the mode of its determination is left to the trial court." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

"When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). The facts alleged in the complaint are generally accepted as true unless controverted; the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc.*, 557 F.2d at 1284. "[C]onflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citation omitted).

To establish personal jurisdiction over a nonresident defendant, the plaintiff must show that the forum state's long-arm statute confers jurisdiction over the defendant and that the exercise of jurisdiction comports with constitutional principles of due process. *Id.*; *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute allows the exercise of personal jurisdiction to the same extent as the United States Constitution. *See* Ariz. R. Civ. Proc. 4.2(a); *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997); *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995) (stating that under Rule 4.2(a), "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution"). Thus, a court in Arizona may exercise personal jurisdiction over a nonresident defendant so long as doing so accords with constitutional principles of due process. *Cybersell*, 130 F.3d at 416.

Due process requires that a non-resident, non-consenting defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2039 (2023) (reaffirming that personal jurisdiction exists where a defendant has consented to suit). Courts recognize two forms of contacts-based personal jurisdiction within the confines of due process: "(1) 'general

1    jurisdiction' which arises when a defendant's contacts with the forum state are so pervasive

2    as to justify the exercise of jurisdiction over the defendant in all matters; and (2) 'specific

3    jurisdiction' which arises out of the defendant's contacts with the forum state giving rise

4    to the subject litigation." *Birder v. Jockey's Guild, Inc.*, 444 F. Supp. 2d 1005, 1008 (C.D.

5    Cal. 2006). "Each defendant's contacts with the forum State must be assessed

6    individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984).

7    **III.    ANALYSIS**

8          **A.    General Jurisdiction**

9          Plaintiff's allegations are insufficient to demonstrate the Court has general

10    jurisdiction over the Canadian Defendants. "[T]he place of incorporation and principal

11    place of business are paradigm bases for general jurisdiction" over a corporation. *Daimler*

12    *AG v. Bauman*, 571 U.S. 117, 137 (2014). Under *International Shoe*, general or all-purpose

13    jurisdiction over a corporation arises in "instances in which the continuous corporate

14    operations within a state [are] so substantial and of such a nature as to justify suit . . . on

15    causes of action arising from dealings entirely distinct from those activities." *Id.* at 138

16    (quoting *Int'l Shoe Co.*, 326 U.S. at 318) (internal quotations omitted). It is not sufficient

17    that a corporation simply "engages in a substantial, continuous, and systematic course of

18    business" in the forum state; instead, general jurisdiction over a corporation exists only

19    when the corporation's "affiliations with the State are so continuous and systematic as to

20    render them essentially at home in the forum state." *Id.* at 127, 137–38 (internal quotations

21    and citations omitted). Thus, "the general jurisdiction inquiry does not focus solely on the

22    magnitude of the defendant's in-state contacts," but rather "calls for an appraisal of a

23    corporation's activities in their entirety." *Id.* at 139 n.20. Ultimately, "a corporation that

24    operates in many places can scarcely be deemed at home in all of them." *Id.*

25          The Certificates of Service on IntouchCX and its employees, Messrs. Lloyd and

26    Fettes (Docs. 80–82), as well as the Canadian Defendants' Motion (*e.g.*, Mot. at 7), all

27    show IntouchCX is incorporated in Winnipeg, Manitoba. Plaintiff has alleged no facts and

28    provided no evidence that IntouchCX has its principal place of business in Arizona. Indeed,

1    Plaintiff alleges he worked for what appears to be the American subsidiary, IntouchCX

2    US, in Arizona—the subject of the Court's prior Order (Doc. 90). The only evidence

3    Plaintiff does provide to resist the Canadian Defendants' Motion consists of screen shots

4    of webpages showing *IntouchCX US* is incorporated *in Colorado*, not Arizona—

5    information that is wholly irrelevant to the question whether the Canadian company,

6    *IntouchCX*, is at home *in Arizona*, as required for the Court to find it has general personal

7    jurisdiction over IntouchCX. (*See* Resp. Exs. 1–3.)

8         Even if IntouchCX is the parent company of IntouchCX US, such a structure,

9    without more, would not lead to a finding of personal jurisdiction over IntouchCX in

10   Arizona. *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520–21 (9th Cir. 1989) (noting that a

11   nonresident corporate defendant may be subject to personal jurisdiction by way of its

12   subsidiary corporation's contacts on a showing that parent and subsidiary are not really

13   separate entities); *Patterson v. Home Depot, USA, Inc.*, 684 F. Supp. 2d 1170, 1177–78 (D.

14   Ariz. 2010) (stating that, under Arizona law, corporate form is not lightly disregarded and,

15   to "pierce the corporate veil or demonstrate alter-ego status," plaintiff must show "unity of

16   control" and that the "observance of the corporate form would sanction a fraud or promote

17   injustice" (internal quotations and citations omitted)). No allegations or evidence before

18   the Court even begin to show the unity of control required to impute the actions of

19   IntouchCX US on IntouchCX for the purposes of personal jurisdiction. For these reasons,

20   Plaintiff has not met his burden to show that the Court has general jurisdiction over the

21   Canadian Defendants.

22        **B.    Specific Jurisdiction**

23        Likewise, Plaintiff has not sufficiently alleged or provided evidence that the Court

24   has specific jurisdiction over the Canadian Defendants. Whether a court may exercise

25   specific jurisdiction in a given case turns on the extent of the defendant's contact with the

26   forum and the degree to which the plaintiff's suit is related to the defendant's contacts.

27   *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th

28   Cir. 2006). The Ninth Circuit uses the following approach to determine whether a court

1    may exercise specific jurisdiction over a nonresident defendant: (1) the nonresident

2    defendant must do some act in or consummate some transaction with the forum, or perform

3    some act by which it purposefully avails itself of the privilege of conducting activities in

4    the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be

5    one which arises out of or results from the defendant's forum-related activities; and (3) the

6    exercise of jurisdiction must be reasonable. *Data Disc*, 557 F.2d at 1287.

7          The plaintiff bears the burden of establishing the first two requirements of the test.

8    *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the

9    plaintiff establishes the first two requirements, the burden shifts to the defendant to

10   establish that the third requirement is not met. *Mavrix Photo, Inc. v. Brand Techs., Inc.*,

11   647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

12   476–78 (1985)). All three requirements must be met for the exercise of jurisdiction to

13   comport with constitutional principles of due process. *Omeluk*, 52 F.3d at 270.

14         To meet the first element—that the defendant purposefully directed activities at the

15   forum state—the plaintiff must show the defendant "either (1) 'purposefully availed'

16   himself of the privilege of conducting activities in the forum, or (2) 'purposefully directed'

17   his activities towards the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th

18   Cir. 2006) (quoting *Schwarzenegger*, 374 F.3d at 802). To determine whether the

19   defendant's actions constitute purposeful direction, courts apply the "effects" test that was

20   developed in *Calder*, 465 U.S. at 789–90. The effects test requires that "the defendant

21   allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum

22   state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

23   *Yahoo!*, 433 F.3d at 1206. "The proper question is not where the plaintiff experienced a

24   particular injury or effect but whether the defendant's conduct connects [it] to the forum in

25   a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). In other words, the

26   relationship between the defendant, the forum state, and the litigation "must arise out of

27   contacts that the defendant *himself* creates with the forum State" and not just "the

28   defendant's contacts with persons who reside there." *Id.* at 284.

- 6 -

1    To begin with, the TAC includes no non-conclusory allegations as to any intentional

2  actions IntouchCX or Mr. Fettes took that were aimed at Arizona, let alone that Plaintiff's

3  discrimination claims arose from those actions. The Court thus does not have personal

4  jurisdiction over IntouchCX or Mr. Fettes.

5    With regard to Mr. Lloyd, Plaintiff alleges Mr. Lloyd visited Arizona two times,

6  once on September 21, 2019, for the purpose of "inform[ing] agents that the 'Instacart'

7  campaign would sunset soon," and once on December 9, 2019, for the purpose of "learning

8  more about how the Netflix campaign launch was coming along." (TAC ¶¶ 30, 32, 46.)

9  While Plaintiff alleges that, during these visits, he told Mr. Lloyd he suffered from a hostile

10 work environment in Arizona, no allegations demonstrate Mr. Lloyd engaged in

11 discriminatory conduct aimed at Plaintiff.[3] In its prior Order, the Court recognized only

12 that Plaintiff sufficiently alleged facts supporting a hostile work environment claim against

13 his employer, IntouchCX US, including that it made "phantom complaints" against him,

14 "controvert[ed] his insurance claim," and terminated him for a pretextual reason. (Doc. 90

15 at 5–6.) No such allegations against the Canadian Defendants exist in the TAC, nor does it

16 contain allegations that the Canadian Defendants controlled Plaintiff's employer in

17 Arizona, IntouchCX US, to the degree required. For these reasons, Plaintiff has failed to

18 demonstrate that the Court has general or specific jurisdiction over the Canadian

19 Defendants, which was his burden, and the Court must dismiss Plaintiff's claims against

20 them.

21    **IT IS THEREFORE ORDERED** granting the Canadian Defendants Marc Lloyd,

22 Greg Fettes, and IntouchCX, Inc.'s Motion to Dismiss (Doc. 84) and dismissing Plaintiff's

23 claims against these Defendants for lack of personal jurisdiction.

24

25    [3] Plaintiff's allegation that Mr. Lloyd (while in Winnipeg) did not respond "for several days" to Plaintiff's July 6, 2019 email alleging a hostile work environment at his workplace in Arizona, (*see* TAC ¶ 26), does not form the basis of a discrimination claim
26 against Mr. Lloyd as a matter of law. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) (noting a "hostile work environment claim is composed of a series of
27 separate acts that collectively constitute one 'unlawful employment practice'"). Indeed, if the Court had personal jurisdiction over the Canadian Defendants, the Court would dismiss
28 all of Plaintiff's claims against the Canadian Defendants in the TAC for failure to state a claim under Rule 12(b)(6).

- 7 -

1

2

3

4

**IT IS FURTHER ORDERED** that certain of Plaintiff's claims remain pending against only Defendant Intouch CX US, Inc. (*see* Doc. 90), which has now filed an Answer to the Complaint (Doc. 91). The Court will set a Rule 16 Scheduling Conference by separate Order.

5

Dated this 18th day of October, 2024.

6

7

Honorable John J. Tuchi
United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28